UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY NAULA,

                Plaintiff,

     v.

NEW YORK CITY DEPARTMENT OF EDUCATION, RENEE KLAGER,

                Defendants.

24-cv-333 (NRM) (LB)

**MEMORANDUM AND ORDER**

NINA R. MORRISON, United States District Judge:

    Mary Naula, proceeding *pro se*, brings this action against the New York City Department of Education and Renee Klager pursuant to Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, New York City Human Rights Law, and 42 U.S.C. § 1983. Naula, who identifies as Hispanic and Ecuadorian, broadly claims that she experienced racial discrimination while employed as a guidance counselor at College Point Collaborative Middle School in New York City. She alleges that this discrimination culminated in her termination from her position, the Department of Education opposing her unemployment benefits, and initiating an investigation against her.

    Defendants move to dismiss Naula's claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons to follow, Defendants' motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

The following facts are taken from Plaintiff's Complaint ("Compl."), ECF No. 1,[1] and are accepted as true and construed in the light most favorable to Plaintiff for the purposes of this motion.

Naula was employed as a guidance counselor at College Point Collaborative Middle School from February 2019 until July 8, 2022. Compl. ¶ 1. Broadly, she alleges that after she raised concerns with Principal Klager about the disparate treatment that Hispanic Students and staff experienced, including Naula herself, she was subjected to poor performance reviews, disciplinary letters, and eventual termination. *Id.* ¶ 3.

Throughout the 2021–2022 school year, Naula raised the concerns of a significant number of Hispanic students to Principal Klager about disparate treatment. *Id.* ¶¶ 2–3. For example, in early April of 2022, Naula spoke to Principal Klager about several minority students who felt targeted when accused of wrongdoing by Caucasian students, but complained that when Hispanic students reported the misconduct of Caucasian students, those reports were ignored. *Id.* ¶ 6. On April 8, 2022, Naula was brought into Klager's office to speak with a parent of a Hispanic student who reported being bullied at school, and Naula advised the parent to schedule a meeting with Principal Klager and the administration. *Id.* ¶¶ 7–9. After that conversation, which Naula alleges Principal Klager overheard, she was issued a disciplinary letter for leaving a student unsupervised, even though Naula contends

---

[1] Pincites refer to page numbers generated by CM/ECF, and not the document's internal pagination.

that this never happened, and a social worker was present with the student. *Id.* ¶¶ 10–11. Naula argues that this disciplinary action was in direct retaliation for "guiding a Hispanic parent on how to make a complaint with the school." *Id.* ¶ 12.

Additionally, Naula contends that she was disciplined for *not* reporting a complaint of bullying. *Id.* ¶ 16. Naula alleges that she in fact translated a letter reporting this bullying incident (from Spanish into English) to Dean Johnsen, a white colleague. *Id.* Despite also not reporting the incident, Dean Johnsen did not receive any discipline. *Id.*

After receiving an unsatisfactory rating from Principal Klager, Naula was informed that Klager had elected to discontinue her probationary service on June 6, 2022, and on July 8, 2022, that discontinuance was affirmed by the Superintendent. *Id.* ¶¶ 18–19.

Naula alleges that the adverse actions did not cease after her discontinuance. *Id.* ¶ 21. In October of 2022, she filed a complaint with the New York State Division of Human Rights, which was attached to her instant Complaint. *See* NYSDHR Compl., ECF No. 1 at 15–23. In it, she alleged the same wrongdoing as in the instant Complaint, except for the allegations of the investigation into her by the DOE discussed *infra*, as that happened after filing her administrative complaint. *See id.* On November 30, 2022, she was informed that her application for security clearance could not be processed because of an allegation before DOE's Office of Special Investigations, and she was therefore unable to take another position as a school counselor within the DOE. Compl. ¶ 22–23. Additionally, because "[t]he DOE falsely

3

claimed that [Naula] failed to provide a valid Guidance Counselor license," she was "temporarily prevented from obtaining New York States Unemployment Insurance benefits." *Id.* ¶ 24. After an unemployment insurance hearing where the DOE failed to produce a witness "who could state with sufficient particularity its reasons for objecting to [her] entitlement to benefits," Naula was awarded unemployment insurance benefits. *Id.* ¶ 25.

Naula filed the instant action on January 12, 2024, alleging violations of Title VII of the Civil Rights Act of 1964, as well as violations of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). *See* Compl. at 3–4. On June 10, 2024, Defendants filed the instant motion to dismiss the claims based in state law for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and to dismiss all Naula's claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARDS**

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). A case is properly dismissed under Rule 12(b)(1) when the district court "lacks the statutory [] power to adjudicate [the case]." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving such a motion, district courts are empowered to "refer to evidence outside the pleadings." *Id.* Fed. R. Civ. P. 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all

4

purposes." Relying on Rule 10(c), courts have held that "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). Additionally, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of Plaintiff. *Olson v. Major League Baseball*, 29 F.4th 59, 71 (2d Cir. 2022). While allegations in the complaint that "are no more than conclusions[] are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679, the Second Circuit has confirmed that the *McDonnell Douglas* prima facie case "is an evidentiary standard, not a pleading requirement." *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

Thus, to survive a motion to dismiss on a Title VII discrimination claim, a plaintiff need not "plead a *prima facie* case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2015). Rather, "for a discrimination claim to survive a motion to dismiss, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is

5

that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Buon*, 65 F.4th at 79. Additionally, at the motion to dismiss stage, "a *pro se* plaintiff's complaint 'must be construed liberally with "special solicitude" and interpreted to raise the strongest claims that it suggests.'" *Guillaume v. Ocwen Loan Servicing, LLC*, No. 17-cv-7187 (WFK) (LB), 2019 WL 8645386, at *1 (E.D.N.Y. Dec. 17, 2019) (quoting *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013)).

## DISCUSSION

### I. Naula's State Law Claims

Defendants' contend that because Naula brought her claims before the NYDHR, this Court lacks subject matter jurisdiction over her NYSHRL and NYCHRL claims pursuant to the election of remedies doctrine. *See* Def.'s Memorandum in Support of Motion to Dismiss ("Def. Mem.") at 15–16, ECF No 23-3. This Court agrees.

New York Executive Law Section 297(9) bars a person who has "filed a complaint [with the NYSDHR] or with any local commission on human rights" from filing a lawsuit for the same cause of action unless the complaint was dismissed on grounds of "administrative convenience[,] . . . untimeliness[,] . . . [or where] the election of remedies is annulled." N.Y. Exec. Law § 297(9). "[T]here is no question that the election-of-remedies provisions at issue here apply to federal courts as well as state." *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002).

6

Naula has previously brought a complaint to the SDHR which alleges the same claims of discrimination and retaliation as she alleges here. *See* Compl. at 15–23. Thus, the election of remedies doctrine clearly applies here, and this Court lacks subject matter jurisdiction to consider Naula's state law claims. Additionally, even though Naula did not name Klager in the SDHR complaint, because the allegations are identical to those here, the election of remedies doctrine applies to the state law claims against Klager. *See Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 326 (E.D.N.Y. 2007) (holding that "even though the complaint names additional parties" than the administrative complaint did, "because the incidents are identical, this Court lacks jurisdiction over the Plaintiff's NYSHRL claims against all the Defendants").

Naula argues that the election of remedies doctrine should not apply because she did not receive "a full and fair opportunity to litigate [her] claims in the SDHR proceeding." Naula Memorandum of Law in Opposition to Def.'s Mot. to Dismiss ("Naula Opp") at 15, ECF No. 22. However, there is no indication that her claims were dismissed for "administrative convenience[,] . . . [or] untimeliness." N.Y. Exec. Law § 297(9). Naula relies on *Garcia v. NYC Health & Hospital Corporation* for the proposition that if sufficient process is not followed at the administrative complaint stage, the election of remedies doctrine does not apply. *See* Naula Opp. at 14–15 (citing to *Garcia v. NYC Health & Hosp. Corp.*, 19-cv-997 (PAE), 2019 WL 6878729 (S.D.N.Y. Dec. 17, 2019)). However, *Garcia* does not stand for such a proposition. *Garcia* held that a lack of process at the NYSDHR stage could allow a plaintiff to

7

overcome a *claim preclusion defense* to their § 1981 claim. *Garcia*, 2019 WL 6878729, at *13–14. In fact, while noting that the plaintiff's § 1981 claim survived, the Court in *Garcia* actually did dismiss the plaintiff's NYCHRL claim pursuant to the election of remedies doctrine. *See id.* at *16.

Thus, because Naula "elected to pursue her . . . remedies before the state agency, [this Court] lack[s] jurisdiction" to adjudicate her state law claims. *Bleichert v. New York State Educ. Dep't*, 793 Fed. App'x 32, 35 (2d Cir. 2019) (summary order). Naula's NYCDHR and NYSDHR discrimination claims, as well as her retaliation claims concerning her termination and opposition to her employment benefits, must be dismissed for lack of subject matter jurisdiction.[2]

## II. Title VII Discrimination Claim

Defendants argue that Naula's discrimination claim must be dismissed under Rule 12(b)(6). *See* Def. Mem. at 19–23. The Court disagrees.

Preliminarily, all Title VII claims against Klager must be dismissed, as individuals are not subject to liability under Title VII. *See Guerra v. Jones*, 421 Fed. App'x 15, 17 (2d Cir. 2011) (summary order). However, in her opposition, Plaintiff has requested that the Court construe her complaint as bringing a claim under 42 U.S.C. § 1983 against individual defendant Klager. The Court will do so, and conduct its analysis simultaneously with the Title VII claim as Naula's § 1983 Equal

---

[2] As Naula's NYSHRL and NYCHRL claims are being dismissed pursuant to the election of remedies doctrine, the Court declines to pass judgment on Defendants' timely notice of claim argument.

8

Protection claim "parallels [her] Title VII claim." *Feingold v. New York*, 366 F.3d 138, 159 (2004).

"[F]or a discrimination claim to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Buon*, 65 F.4th at 79. Naula has met this standard with respect to her discrimination claims.

Defendants do not dispute that Naula is a member of a protected class or was qualified. Additionally, as she was terminated from her position, they cannot dispute that she suffered an adverse employment action. Rather, they argue that her complaint does not give rise to an inference of discriminatory animus. *See* Def. Mem. at 19–23.

There are many ways a Plaintiff can provide at least minimal support that her employer was motivated by discriminatory intent, including, but not limited to, invidious comments about others in employee's protected group, *Carmellino v. Dist. 20 of N.Y.C. Dep't of Educ.*, 3-cv-5942 (PKC), 2006 WL 2583019, at *6 (S.D.N.Y. Sept. 6, 2006), or that an employer treated Plaintiff "less favorably than a similarly situated employee outside [the] protected group," *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010). The allegation in the Complaint that Naula was disciplined for not reporting an incident of bullying when her white colleague, Dean Johnsen,

9

was not reported, is enough to provide minimal support to the contention of discriminatory intent. Compl. ¶¶ 14–16.

In arguing that this event does not provide minimal support for the contention of discriminatory intent, Defendants primarily argue that Naula does not allege facts showing that Dean Johnsen is similarly situated to her in all material respects. Def. Mem. at 22–23. They chiefly rely on *Back v. Bank Hapoalim, B.M.*, where a court in the Southern District found that an executive assistant failed to show that the senior executives who were allegedly treated better were "similarly situated." No. 23-cv-2040 (ER), 2024 WL 1216659, at *8 (S.D.N.Y. Mar. 21, 2024).

However, since Defendants filed their papers in this case, the *Back* case was vacated by summary order by the Second Circuit. *See Back v. Hapoalim*, 2024 WL 4746263 (2d Cir. Nov. 12, 2024) (summary order). The Circuit, in addressing the question as to whether the executives were "similarly situated" to the plaintiff, held that the plaintiff was entitled to have "reasonable inferences drawn in her favor . . . and it was reasonable to infer that department heads . . . would also report directly to the CEO." *Id.* at *4. Broadly, the Circuit held that "questions regarding whether [a plaintiff's] and the alleged [] comparators' positions, responsibilities, and chains of command were sufficiently similar are fact-intensive ones that are not appropriately resolved in this case . . . on a motion to dismiss." *Id.*

Here, similarly to the situation in *Back*, Naula is entitled to inferences drawn in her favor that Dean Johnsen also had a responsibility to report bullying incidents, and thus was materially similarly situated. The question of their specific duties and

responsibilities is a fact-intensive one that is not appropriate to address at the pleading stage.

This allegation regarding Dean Johnsen is enough for Naula's Complaint to defeat a motion to dismiss. However, the allegations of the discriminatory treatment of students at the school also give at least minimal support to the allegation of discriminatory intent. It is true that the treatment of students is not necessarily covered by Title VII. However, "allegations of discrimination, even if they do not independently constitute adverse employment actions, provide 'relevant background evidence' by shedding light on Defendant's motivation." *Vega*, 801 F.3d at 88. The allegations that the school and Principal Klager may have been discriminatory towards Hispanic students is relevant background in assessing whether or not their actions towards Naula, a Hispanic employee, were motivated by discriminatory intent.

Thus, the Court must deny Defendants' motion to dismiss Naula's Title VII and § 1983 claims of discrimination.

### III.  Retaliation Claims

Defendants also argue that all retaliation claims must be dismissed under Rule 12(b)(6). *See* Def. Mem. at 23–33. The Court disagrees.

To survive a motion to dismiss at the pleading stage of a Title VII retaliation claim, a plaintiff must plead that she (1) participated in a protected activity, (2) the defendant knew of the protected activity, (3) there was an adverse employment action, and (4) there was a causal connection between the protected activity and the

11

adverse employment action.  *See Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015).

Defendants argue that Letters to File and Unsatisfactory Ratings are not actionable adverse employment actions.  *See* Def. Mem. at 26–27.  However, there is no dispute that Naula's termination in July of 2022 was an adverse employment action.  *See* Compl. ¶ 19.  Additionally, there is no dispute that filing a formal charge of discrimination under NYSDHR, as Naula did in October of 2022, is a protected activity.  *See Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000).

Defendants essentially make two arguments: first, that Naula has not pled she participated in any protected activities before her termination.  Def. Mem. at 24–25.  Second, they argue that after the filing of her NYSDHR complaint, no adverse employment actions were taken against her.  *Id.* at 28–33.  For those reasons, Defendants argue, Naula's retaliation claims must fail.  The Court will take each argument in turn.

Defendants are correct that simply advocating on behalf of Hispanic students does not constitute a protected activity, as protected activities are limited to opposing "any practice made an unlawful employment practice by other provisions of Title VII." *Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, 2023 WL 2469824, at \*1 (2d Cir. Mar. 13, 2023) (summary order) (internal quotation marks omitted); *see also* 42 U.S.C. § 2000e-3(a).  Discriminating against students based on race or national origin, while obviously not legal, is not something that is an unlawful *employment* practice.

12

However, in paragraph three of her Complaint, Naula *does* claim that "shortly after [she] raised concerns with Principal Renee Klager regarding the disparate treatment Hispanic students *and staff* experienced, including [herself], . . . Klager subjected [her] to poor performance reviews, unwarranted disciplinary letters to file, and discontinued [her]." Compl. ¶ 3 (emphasis supplied). These concerns fall squarely in the ambit of protected activities, as "informal protests of discriminatory employment practices, including making complaints to management," are protected by Title VII. *Littlejohn*, 795 F.3d at 317 (internal quotation marks omitted); *see also Claud v. Brown Harris Stevens of Hamptons, LLC*, 676 F. Supp. 3d 100, 128–29 (E.D.N.Y. 2023) (finding that approaching management to express concerns of a pattern of discriminatory conduct is a protected activity).

Additionally, because Naula alleges that shortly after bringing these concerns to Klager, disciplinary letters and her eventual discontinuance followed, she has satisfied the low bar of pleading, through indirect evidence, a causal connection between these complaints and the adverse employment action of her termination. *See Matos v. Discovery Commc'ns, LLC*, No. 23-cv-2218 (KMK), 2024 WL 4290674, at *11 (S.D.N.Y. Sep. 25, 2024) (affirming that a plaintiff may establish causation "through indirect evidence, by showing that discriminatory treatment closely followed the protected activity"). The Second Circuit has directed that even when a retaliatory action came five months after making a complaint, that is "not too long to find [a] causal relationship." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Thus, while it is true that there could be more detail in the Complaint

13

regarding the specific concerns of Title VII violations Naula brought to Klager, given the stage of the proceeding and the fact that this is a *pro se* complaint, it would be improper to dismiss the retaliation claims on the grounds that Naula did not engage in any protected activity. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (noting that if "a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated," dismissal on the pleadings is improper).

Defendants also argue that any claims alleging that there was retaliation in reaction to Naula's NYSDHR complaint must be dismissed because opposition to her unemployment benefits, her rescinded security clearance, and failure to hire claims are not adverse employment actions. Def. Mem. at 28–32. The Court disagrees.

Defendants assert that opposition to unemployment benefits cannot be an adverse employment action. *Id.* at 28–29. While some courts in this Circuit have come to that conclusion, *see, e.g., Wright v. City of Syracuse*, No. 10-cv-661 (GTS/TWD), 2014 WL 1293527, at *20 (N.D.N.Y. Mar. 31, 2014), I am persuaded by Judge McCarthy's reasoning in *Swain v. Town of Wappinger*, where the court declined to adopt a bright line rule regarding the opposition to unemployment benefits, and instead "evaluat[ed] the specific facts and circumstances of the case" to determine how long the plaintiff was left without benefits due to the defendant's opposition, No. 17-cv-5420 (JCM), 2019 WL 2994501, at *14 (S.D.N.Y. July 9, 2019); *see also Holleman v. Art Crating Inc.*, 23-cv-2709 (VMS), 2014 WL 4907732, at *49 (E.D.N.Y. Sep. 30, 2014) (finding that the loss of unemployment benefits for "many weeks" due to employer's opposition constituted an adverse employment action).

14

Given that the Supreme Court has cautioned that "the significance of any given act of retaliation will often depend upon the particular circumstances," I also decline to adopt a bright line rule as to whether the opposition to unemployment benefits is or is not an adverse employment action. *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 69 (2005).

In this case, Naula asserts that she was terminated in July of 2022, and she did not receive her unemployment benefits until an unemployment insurance hearing. Compl. ¶¶ 19, 25. Given the factual nature of whether or not the opposition to unemployment benefits is an adverse employment action, it would be inappropriate to dismiss this claim at the pleading stage before it is known for how long Naula was denied her benefits, and before discovery indicates why the DOE failed to produce witnesses who could "state with sufficient particularity" why they opposed Naula's benefits. Compl. ¶ 25.

Defendants also argue that the DOE's Office of Special Investigation's ("OSI") allegation against Naula cannot constitute an adverse action because a government investigation in itself does not amount to an adverse employment action. Def. Mem. at 29–31. Defendants are correct that while "an employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted in such an egregious manner as to dissuade a reasonable worker from making or supporting a charge of discrimination," *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 147 (2d Cir. 2014) (internal quotation

15

marks omitted), an investigation in *itself* does not constitute a retaliatory action, *see Little v. NBC*, 210 F. Supp. 2d 330, 387 (S.D.N.Y. 2002) (finding that a plaintiff who produces no "evidence that any disciplinary or other type of action was ever taken against him as a result of the investigation" cannot maintain a claim of retaliation (alteration and internal quotation marks omitted)).

However, this argument misreads Naula's Complaint. Naula alleges that allegations from the DOE's OSI, which prevented her from obtaining her security clearance, were the direct cause of her not being able to obtain another position at the DOE. Compl. 22–23. As Naula clarifies in her opposition briefing, these actions by the DOE "resulted in [her] losing a nomination for a DOE position in November 2022." Naula Opp. at 28. The materially adverse employment action Naula is alleging is that, by initiating a retaliatory investigation against her, the DOE prevented her from obtaining another position at the DOE. Thus, her claims regarding the OSI investigation and her security clearance are properly read as a *failure to hire* claim.

Defendants argue that a failure to hire claim cannot be maintained because an "essential element of a failure to hire claim is that a plaintiff allege that she applied for a specific position and was rejected." Def. Mem. at 31 (quoting *Felder v. United States Tennis Ass'n*, No. 17-cv-5045 (ER), 2018 WL 5621484, at *3 (S.D.N.Y. Oct. 30, 2018)). However, this is not a universal requirement of all failure to hire retaliation claims. It is not necessary "where the facts of a particular case make an allegation of

16

a specific application a quixotic requirement." *Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir. 1998).

Here, Naula's complaint specifically alleges that she was unable to take any other position as another school counselor because of her lack of security clearance. Comp. ¶ 23.  It would surely be a "quixotic requirement" to require her to have applied to a specific posting if, because she could not obtain her security clearance, any application would have been futile.  Thus, Defendants' arguments that Naula's retaliation claim based on the OSI investigation is rejected.

Additionally, because the OSI investigation and failure to hire claim were not a part of Naula's NYSDHR complaint, and "[r]etaliation claims under the NYSHRL are analyzed using the burden-shifting framework of *McDonnell Douglas*," *Nezaj v. PS450 Bar and Restaurant*, 719 F. Supp. 3d 318, 334–35 (S.D.N.Y. 2024), Naula's NYSHRL and NYCHRL claims of retaliation relating *solely* to those actions also survive against the DOE and Principal Klager. *See Benson*, 482 F. Supp. 2d at 326 (holding that claims *not* included in the original administrative complaint are not subject to dismissal pursuant to the election of remedies doctrine).  Defendants argue that Principal Klager cannot be held liable under NYSHRL because an individual may only be held liable under the NYSHRL for aiding and abetting discrimination. *See* Def. Mem. at 34 (citing N.Y. Exec Law § 296(6)).  But the Court has not dismissed Plaintiff's retaliation claim against the DOE; thus, Plaintiff can still seek to hold Principal Klager individually liable for aiding and abetting discrimination under the NYSHRL.  *See Nezaj*, 719 F. Supp. 3d at 333 (finding, "as a predicate to claiming

17

aiding and abetting discrimination, a plaintiff must have pled discrimination by a principal").

## **CONCLUSION**

For the reasons stated above, Naula's New York State and City Human Rights Law claims, except for those alleging retaliation for failure to hire, are dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). Defendants' motion to dismiss Naula's Title VII and § 1983 discrimination and retaliation claims against the DOE and Klager, respectively, is denied. Defendants' motion to dismiss Naula's New York State and City Human Rights Law claims alleging retaliation in the form of failure to hire is denied.[3]

SO ORDERED.

*/s/ Nina R. Morrison*

NINA R. MORRISON
United States District Judge

Dated: Brooklyn, New York
         March 30, 2025

---

[3] Defendants argue that any § 1983 *Monell* claims against the DOE should be dismissed as Naula has not shown that her "denial of a constitutional right . . . was caused by an official policy or custom." Def. Reply Br. at 16, ECF No. 24 (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019)). It does not appear that in her Complaint or opposition Naula has alleged any *Monell* claims against the DOE. Rather, the § 1983 claims Naula asserts are against Klager. However, to the extent that Naula's complaint can be read as to contain any municipal liability claims under *Monell*, the Court agrees with Defendants that Naula has not pled that Klager's actions were due to any official policy or custom on the part of the DOE, and those claims are dismissed.